IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 CV 1941 |
| | ) | Judge Edmond E. Chang |
| CONCEPCION MALINEK, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO
CONCEPCION MALINEK'S 28 U.S.C. § 2255 PETITION**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby responds to Concepcion Malinek's petition pursuant to 28 U.S.C. § 2255, as follows. In her petition, Malinek appears to argue her innocence and that her trial counsel rendered ineffective assistance regarding her guilty plea. Malinek's petition should be denied for the reasons set forth below.

**District Court Proceedings**

*The Charges and Conviction*

On October 2, 2019, Malinek was charged in a superseding indictment with ten counts of labor trafficking, in violation of 18 U.S.C. § 1589(a)(2), (a)(3), (a)(4), and four counts of fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. § 1546. R. 32.[1] The charges arose after Malinek engaged in the labor

---

[1] Citations to the record in Malinek's criminal case, 19 CR 277, are to "R.", followed by the applicable docket item number. Citations to the record in the current matter are to "CVR.", followed by the applicable docket item number.

trafficking of at least ten individuals, beginning in 2009 and continuing through March 2019. R. 71 at 6.[2] Malinek targeted poor individuals in her former village of Guatemala, who wanted to relocate to the United States by any means. *Id.* She chose these victims as she believed they would be too scared to contact law enforcement to inform them about the conditions in which they were living. *Id.* She offered the victims a chance to live in the United States, and quoted a fee of approximately $5,000 for her services. *Id.* Once her victims agreed to come to the United States, Malinek assisted them in illegally smuggling across the border and eventually traveling to her residence in Cicero, Illinois. *Id.* Once Malinek had a victim inside her residence, she would inform the victim of their "debt," which ranged anywhere from $18,000 to $42,000. *Id.* Malinek obtained fraudulent social security and legal permanent resident cards of the victims so she could obtain work for them at a sandwich assembly factory, where they worked 40 hours per week. *Id.* When they were not working, all of the victims resided in Malinek's residence. *Id.* On the day of Malinek's arrest, there were 33 individuals living in Malinek's single-family home in Cicero. *Id.* Of the total number, 22 individuals shared a single bathroom and resided in the basement sleeping in bunkbeds. *Id.* Malinek charged each victim hundreds of dollars per month, which she added to their total debt, for rent to live in her home. *Id.* The victims reported squalid conditions in the basement, including cockroaches and walls covered with mold. *Id.*

---

[2] This factual synopsis is taken from the Presentence Investigation Report. R. 71. Though Malinek objected to the guidelines calculations set forth in the PSR, and provided her own version of facts therein, she did not object to the facts set forth in the PSR. R. 78.

On July 28, 2020, Malinek entered a guilty plea to Count Ten of the superseding indictment pursuant to a written plea declaration. R. 66, R. 68, R. 105. On that same date, the district court conducted a plea colloquy with the assistance of a certified Spanish interpreter. R. 105.

During the colloquy, the district court confirmed that Malinek agreed to proceed by phone. *Id.* at 3-4. The court then placed Malinek under oath and informed her that she was free to take a break at any time to consult with her attorney: "if at any time you want to stop and speak with [your attorney] privately, we can arrange that through the phone system." *Id.* at 3, 5. Malinek stated that she understood this. *Id.* at 5.

During the colloquy, Malinek stated that she had a number of health issues, including a head injury sustained from a bus accident. *Id.* at 7-8. She further stated that she was taking medication for her diabetes. *Id.* at 7. She acknowledged that she had fully recovered from the head injury, and that the injury and the diabetes medication did not make it harder for her to think or understand. *Id.* at 7-8. She stated that she had never been diagnosed with or suffered from a mental illness. *Id.* She denied being under the influence of alcohol or any other drug besides the diabetes medication. *Id.* at 8.

Malinek further stated during the colloquy that she was "very satisfied" with "the efforts and advice that [her attorney had] provided" and that she had had sufficient time to discuss with him her decision to plead guilty. *Id.* at 9. She stated that her attorney had read the plea declaration to her, that she understood it, and

3

that she was "very satisfied" with her attorney's advice in preparing the plea declaration. *Id.* at 9, 12. Malinek denied that anyone threatened her or her family or anyone else in order to force her to plead guilty, or promised her anything to cause her to plead guilty. *Id.* at 13, 16. She admitted that her decision to plead guilty was voluntary on her part. *Id.* at 16.

The district court subsequently asked Malinek to listen to her attorney's recitation of the factual basis for her guilty plea and admonished her to listen carefully "because after he is done, I will turn back to you, and I will ask you whether you agree with all of the facts that he just stated." *Id.* at 20.

Malinek confirmed that all of the facts described by her attorney were true, and that she did not disagree with any of the facts. *Id.* at 23. She pleaded guilty, and the district court accepted her guilty plea. *Id.*

***The Sentencing***

Malinek was sentenced on April 19, 2021. R. 93, R. 96, R. 106, R. 107. The district court determined that Malinek's total offense level was 26, her Criminal History Category was I, and her advisory guidelines range of imprisonment was 63 to 78 months' imprisonment. R. 106 at 26. Malinek was sentenced to a term of 78 months' imprisonment, followed by a two-year term of supervised release, a special assessment of $100.00, and restitution of $112,545.00. R. 96.

**Malinek's Appeal**

On May 3, 2021, Malinek filed a notice of appeal from the judgment and order of the district court sentencing her to a term of imprisonment of 78 months. R. 99. Malinek voluntarily dismissed her appeal on November 23, 2021. R. 122.

**Malinek's § 2255 Petition**

On April 14, 2022, Malinek filed her petition pursuant to 28 U.S.C. § 2255. The petition appears to suggest her innocence, and that her attorney performed ineffectively in connection with her guilty plea and pressured her to accept the plea. CVR 1 at 2, 4-7. She does not allege any particular constitutional or statutory violation, and instead seems to argue her innocence and requests a reduced sentence rather than a vacatur. CVR 1.

## ANALYSIS

**1. Malinek's petition fails to assert a constitutional or statutory violation.**

Malinek's petition seems to argue that she is, in fact, innocent. CVR 1. It goes on to state, however, that she does not seek to vacate her conviction or sentence, only to reduce her sentence. *Id.* at 7. Title 28, United States Code, Section 2255(a) states that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

As the Seventh Circuit explained in *Barnickel v. United States*, the Court must grant a 28 U.S.C. § 2255 motion whenever a defendant's sentence was imposed in violation of the Constitution or laws of the United States. 113 F. 3d 704, 705 (7th Cir. 1997). Relief under § 2255 is reserved for errors of law that are jurisdictional, constitutional, or constitute a fundamental defect which inherently results in a complete miscarriage of justice. *Id.*

Malinek's petition, in addition to not claiming the right to be released, fails to assert any of the valid bases outlined in Section 2255(a). Instead, Malinek makes vague claims of innocence and suggests that her attorney persuaded her to plead guilty. CVR 1. These contentions, and Malinek's petition as a whole, are not sufficient under Section 2255(a).

**2.   Malinek's plea colloquy contradicts her allegations of ineffectiveness regarding her guilty plea.**

In order to prevail on a claim of ineffective assistance of counsel, Malinek must show (1) that her attorney's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for her counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The inquiry under the first component of this test is "highly deferential" to counsel. *Id.* at 689. Counsel is presumed to have made reasonable strategic judgments, and "there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (quoting *United States v. Lindsay*, 157 F.3d 532, 535 (7th Cir. 1998)). Strategic decisions are not

second-guessed on review. *United States v. Ruzzano*, 247 F.3d 688, 696 (7th Cir. 2001).

The second component of the *Strickland* test requires the petitioner to establish that she was prejudiced by her counsel's deficient performance. *Strickland*, 466 U.S. at 689. This requires Malinek to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Malinek must satisfy both prongs of the test in order to meet this burden, and a finding against Malinek on either prong ends the inquiry. *Id.* at 697.

To satisfy the first prong of the *Strickland* test in a case where a petitioner pled guilty as a result of alleged ineffective assistance of counsel, the petitioner must show that her counsel's advice leading to the plea was outside the range of professionally competent assistance. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). To satisfy the second *Strickland* prong, Malinek must show that there is a reasonable probability that but for her counsel's deficient performance, she would not have entered a guilty plea and instead would have gone to trial. *Hill*, 474 U.S. at 58; *United States v. Parker*, 609 F.3d 891, 894 (7th Cir. 2010); *Wyatt v. United States*, 574 F.3d 455, 458–59 (7th Cir. 2009). Counsel's deficient performance must have been a decisive factor in the defendant's decision to enter a guilty plea. *Wyatt*, 574 F.3d at 458. To make such a showing, the petitioner must present objective evidence that she would not have entered a guilty plea; her own self-serving testimony that she

7

would have insisted on going to trial is not enough. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011); *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)); *see Wyatt*, 574 F.3d at 458 (stating "a defendant's mere allegation that he would have chosen a path other than the conditional plea is insufficient by itself to establish prejudice."). Malinek has failed to meet these heavy burdens, and her petition should be denied.

Malinek claims in her petition that her trial counsel pressured her to plead guilty. CVR 1. She contends, among other things, that her attorney asked her husband to convince her to take a plea; that her attorney advised her not to say anything because it would look like she was lying; and that her attorney never investigated on her behalf "all the conspiracy etc.". *Id.* at 2, 6. Her contentions lack merit.

Malinek's claims about her attorney's effectiveness regarding her guilty plea are belied by her under-oath statements in the plea colloquy. As noted above, Malinek admitted during the plea colloquy that she was not having any difficulty understanding the district court that morning; she was "very satisfied" with the advice and efforts of her attorney; she had had sufficient time to discuss with her attorney her decision to plead guilty; her attorney had read the plea declaration to her and she understood it; no one had forced, threatened, or promised her anything to cause her to plead guilty; and her decision to plead guilty was entirely voluntary on her part, after discussing this case with her attorney. R. 105 at 7-23.

8

Representations of the defendant, her lawyer, and the prosecutor at a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (U.S. 1977). Solemn declarations in open court carry a strong presumption of verity: the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. *Id.*; *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (statements at the change of plea hearing are presumed truthful).

When a district court conducts a Rule 11 colloquy, it is not putting on a show for the defendant, the public, or anybody else: the purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing. *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010). A defendant is normally bound by the representations he makes to a court during the colloquy, since "[j]ustice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [the petitioner] to renege on his representation under oath to the district court that there were no promises made to him to induce his guilty plea." *Id.* (internal quotations and citations omitted). The petitioner bears a heavy burden of overcoming the presumption that his sworn plea colloquy statements were true. *See*, e.g., *United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012) (To make a case for being permitted to withdraw his guilty plea when the judge's inquiries at the plea hearing had been adequate and

9

had revealed no impairment of the defendant's ability to think, the defendant needs to present the affidavit of a qualified psychiatrist.)

Malinek's claims that her attorney convinced her to plead guilty do not meet her heavy burden of overcoming the presumption that she testified truthfully when she stated that she understood the proceedings, she understood the district court, she had had adequate time to review the plea and to discuss it with her attorney, and she was not forced or pressured into entering the plea. *See United States v. Reed*, 859 F.3d 468, 471–72 (7th Cir. 2017) (though "[a] believable claim that the plea had been coerced . . . would demonstrate a good reason for deceit . . . Reed mentioned none of this in his plea colloquy . . . If Defendant was being coerced into pleading guilty, he should have so stated to the district court . . .[and] should have asked the court to appoint competent counsel and to continue his trial date, " citing *United States v. Jones*, 168 F.3d 1217, 1220 (10th Cir. 1999)).

Malinek has not overcome the strong presumption surrounding her under-oath answers during the plea colloquy: her claims of ineffectiveness regarding her guilty plea lack merit and should be denied.

## CONCLUSION

Relief under § 2255 is an extraordinary remedy because it asks the district court to reopen the criminal process to a person who already has had an opportunity for full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Such relief is reserved for extraordinary situations, *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993), and is appropriate only for "an error of law that is jurisdictional,

constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Borre v. United States,* 940 F.2d 215, 217 (7th Cir. 1991) (citations omitted). Malinek has failed to demonstrate any such errors.

When reviewing the evidence, courts draw all reasonable inferences in the light most favorable to the government. *See Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). An evidentiary hearing must be held if the petitioner "alleges facts that, if proven, would entitle him to relief." *Sandoval v. United States,* 574 F.3d 847, 850 (7th Cir. 2009). However, no evidentiary hearing is necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001), quoting Title 28 U.S.C. § 2255. Where § 2255 motions are based on conclusory allegations without specific details, courts are justified in dismissing them without an evidentiary hearing. *See Boulb v. United States*, 818 F.3d 334, 340 (7th Cir. 2016) (citing *Galbraith v. United States*, 313 F.3d 1001, 1010 (7th Cir. 2002)).

The record before the court shows that Malinek's contentions lack merit. Therefore, her petition should be denied in its entirety, without a hearing, consistent with the case law cited above.

                                      Respectfully Submitted,

                                      JOHN R. LAUSCH, JR.
                                      United States Attorney

By:   */s/ Megan E. Donohue*
       MEGAN E. DONOHUE
       Assistant U.S. Attorney
       219 S. Dearborn, 5th Floor
       Chicago, IL 60604
       (312) 353-1877

May 23, 2022